TAFT vs. CARTER.

| 59 67 |
| 62h 516 |

The owner of a steamer engaged in towing boats on a lake and river is not responsible for an injury to one of the boats, while in tow of the steamer, without proof of actual negligence, or want of ordinary care and skill.

Where the navigation was dangerous, and experienced men differed as to the comparative safety of two plans proposed for making up a tow, in order to pass it safely between the piers of a bridge on the river; *Held* that the owner of the steamer towing it was not to be deemed guilty of negligence, or want of ordinary care or skill, although the jury should believe, upon the evidence, that the captain omitted to adopt the safest plan. It was at most an error of judgment.

THE appellant was the owner of the steamboat *Oswego*, engaged, in the season of 1867, in towing canal boats on the Oneida lake and river, from the head of the lake to the junction of the Oneida and Oswego rivers, at a place called "Three River Point." The respondent was the owner of a canal boat, called the *P. D. Devoe*. Captain Shaver, of the *Oswego*, took the plaintiff's boat, with others, in tow at Barnhart's Bay, on the lake, for the Oswego river. The tow was made up of boats, two abreast, and the *Oswego* towed them safely to the Oak Orchard lock, on the Oneida river, where the tow had to be broken up, in order to pass the boats through the lock. About eighty rods below the lock, a new bridge had been built, by the State, with new abutments, and the navigation there, especially at high water, was considered dangerous from the liability of the boats to swing round and strike the abutments and piers. After passing the lock, a question arose as to whether the captain should tow the coal boats through this dangerous place double or single. The captain decided to tow them through double, in the same order as before. The plaintiff expressed his opinion that it was safer to tow the boats through single. There was evidence that the captain told him to hitch on and he would risk it. The plaintiff then hauled up his boat along side of another boat, and the "tow" was fastened together

as before. The plaintiff, in his evidence, says: "We started, and by some means or other, I don't know how, our 'tow' got twisted a little, and in the current it was impossible to untwist it, and it (the 'tow') run down and struck the right hand pier above the bridge. That turned the tow as they were running down."

The boat that struck the pier was the one along side of the plaintiff's boat. The plaintiff had got loose from her; and then the boat attached to the plaintiff's boat behind ran into her and caused the injury. Considerable evidence was taken, on both sides, as to the comparative safety of towing boats single or double through this place. It was the usual custom to tow them through double, though exceptions had been made on some prior occasions on account of the condition of the bridge and water at that place. Accidents had occurred there, both when the boats were towed through double, and when towed through single. It was admitted that the captain of the steamboat was a competent man.

When the evidence was closed, the defendant's counsel moved for a nonsuit, and insisted that upon the whole case there was no evidence of any such gross carelessness or neglect as would make the owner of the steamboat liable. That at most it was an error of judgment. The court overruled the motion, and charged the jury that the question for them to decide was, whether or not the captain of the steamboat exercised ordinary prudence and the caution of a prudent man; and whether, knowing the place, he was not bound, as a matter of prudence, to separate these boats, which he had in tow, and whether his neglect to do so was a want of prudence. If it was a mere error of judgment, not amounting to want of skill, the defendant was not liable. Exceptions were duly taken to the charge, upon which the defendant moved for a new trial, which being denied, he now appealed from the order to the general term.

---

Taft *v.* Carter.

---

*C. B. Sedgwick,* for the appellant.

The defendant in this action is not liable as a common carrier. On the contrary, he was bound to no more than ordinary care and skill in management. (*Caton* v. *Rummeys,* 13 *Wend.* 387.)

The motion for a nonsuit was improperly overruled, and should have been granted. The court, in refusing the motion for a nonsuit, put it upon the ground that the defendant's servant was bound to more than ordinary care; which is error.

Misjudgment in the captain of the steamer affords no ground for supporting the verdict.

*D. Pratt,* for the respondent; cited *Alexander* v. *Greene,* (7 *Hill,* 533;) *Merrick* v. *Brainard,* (38 *Barb.* 574;) *Wells* v. *Steam Navigation Company,* (8 *N. Y.* 375; and 2 *Comstock,* 204.) He insisted that the question was purely one of fact, and that the verdict of the jury was conclusive.

*By the Court,* MORGAN, J. I am of opinion that the order of the special term should be reversed, and a new trial granted. The only question submitted to the jury was whether the defendant was guilty of negligence or want of skill in not taking the plaintiff's boat single instead of double through the piers of the new bridge. The evidence very strongly tends to show that the defendant exercised at least ordinary care in towing the plaintiff's boat in the situation in which it was placed; and if there was any mistake, it arose out of the circumstance that the defendant chose to attempt the passage with two boats abreast. Accidents had happened when boats were towed singly, one behind the other, but perhaps it was a fair inference from the testimony that it would have been more prudent in this instance to detach the boats. This was the opinion of the plaintiff, expressed at the time, but the captain of the steamer thought otherwise, and the plaintiff, although

Taft *v.* Carter.

dissenting, chose to take his place beside another boat and to be towed in this manner through the pier.

It is clear that the plaintiff was not obliged to be towed in this way. He was at liberty to decline the position assigned to him. The defendant was not a common carrier, and was not obliged to take the defendant's boat at all hazards. It was entirely a matter of contract. The defendant having performed part of it by towing the plaintiff's boat to Oak Orchard safely, the question arose as to the propriety of towing single or double through the piers of the new bridge. It is said that the captain of the steamer was guilty of negligence or want of care or skill in not adopting the plan proposed by the plaintiff. Witnesses differed as to the safety of one plan over the other. It is impossible to know with certainty which is the safest plan, although the jury had a right to find, on the evidence, that the one proposed by the plaintiff was the safest. Now it does not follow, I think, that the defendant was guilty of negligence or want of ordinary care in not adopting one plan rather than the other. It was at most an error of judgment, for which the defendant is not liable. To make the defendant liable, there should be evidence to satisfy the jury that he or his servants were guilty of something more than an error of judgment. Negligence is a relative term, but want of skill is not evidence of negligence. There was no evidence of want of skill, unless it arose out of the captain's misjudgment in a matter where experienced men differed in opinion. If the danger was apparent, and the captain of the steamer recklessly or heedlessly ran into it, it would be sufficient evidence of gross negligence to make him liable. But it would then be a question whether the plaintiff himself was not guilty of negligence in not withdrawing from the tow. But waiving this question, I think the jury were misled by the charge into the belief that it was negligence in the captain of the steamer, in not adopting what they should believe

to be the safest plan, in a case where men might well differ in opinion, without being guilty of negligence or want of ordinary skill.

On the whole, I think a nonsuit should have been granted, and for the error of the judge in denying it, a new trial should be granted, with costs to abide the event.

[ONONDAGA GENERAL TERM, October 5, 1869. *Bacon, Mullin* and *Morgan,* Justices.]